HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| OHIO CASUALTY INSURANCE COMPANY, an Ohio corporation,<br><br>Plaintiff,<br><br>v.<br><br>CHUGACH SUPPORT SERVICES, INC., et al.,<br><br>Defendants. | CASE NO. C10-5244RBL<br><br>ORDER GRANTING SUMMARY JUDGMENT |
| SHON E. FROSTAD, as Personal Representative of the Estate of Bradley J. Frostad,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>R-CUSTOM EXCAVATION, et al.,<br><br>Third-Party Defendants. | |

THIS MATTER is before the Court on its own Motion to Reconsider the Order Denying Plaintiff's Summary Judgment [Dkt. #66]. The Court has reviewed the materials for and against

the Motion for Summary Judgment and the subsequent Motion for Reconsideration [Dkt. #67]. The Court heard oral argument on October 3, 2011. For the following reasons, the Court grants the Motion for Summary Judgment in favor of Plaintiff Ohio Casualty.

## I. BACKGROUND

Chugach Support Services, Inc., a general contractor, entered into a Master Subcontract with Security Resources International ("SRI") for services to be performed at Langley Air Force Base, Virginia. The written contract is dated January 16, 2007. The agreement at paragraph 13 covers the topic of Insurance:

> During the term of this Subcontract and any project awarded to the Subcontractor hereunder, the Subcontractor will, at its sole expense, secure and maintain and will file with Chugach, proper and acceptable evidence of the following described insurance, which coverages shall (1) be secured with an insurance company acceptable to Chugach, (2) be issued as primary Policy not contribution with and not in excess of any primary and/or excess coverages carried by Chugach, and (3) contain loss payable clauses satisfactory to Chugach for applicable coverages.

Neither SRI, nor its principal, Ron Long, obtained insurance as required by the Master Subcontract. On October 17, 2007, SRI signed and accepted a proposal for work by R-Custom. The proposal does not mention insurance. R-Custom was insured by Ohio Casualty. A month after executing the SRI – R-Custom agreement (November 14, 2007), Long requested R-Custom's principal, Rick Larson, to provide a Certificate of Insurance naming Chugach as additional insured on R-Custom's Ohio CGL policy. Long and SRI requested that "no info be sent to Chugach Support, please fax to Angela at SRI."

On December 13, 2007, SRI made an additional request for a Certificate of Insurance showing SRI as additional insured. The question before this Court is whether the production of a

Certificate of Insurance is sufficient to bind Ohio Casualty pursuant to the plain language of its own policy.

The Court must view the policy in its entirety, s*ee Hess v. North Pacific Ins. Co.,* 122 Wn.2d 180, 186 (1993), and give effect to each provision in the policy. *Kish v. Ins. Co. of N. Am.,* 125 Wn.2d 164, 170 (1994).

The Court has construed two provisions, in particular, in the Ohio Casualty Policy.

> Who Is An Insured – Section II is amended to include as an insured any person whom you are *required to name* as an additional insured in this policy *in a written contract* or written agreement. The written contract or written agreement must be currently in effect or becoming effective during the term of this policy and executed prior to the "bodily injury", "property damage" or "personal and advertising injury".
>
> If the additional insured's policy has an other insurance provision making its policy excess, and *a named insured* agreed *in a written contract* or written agreement to provide the additional insured coverage on a primary and noncontributory basis, this policy shall be primary and we will not seek contribution from the additional insured's policy for damages we cover.

[Dkt. #27-2 at pp. 7-8]

The symmetry of these two provisions is unmistakable, yet this Court has previously found one to be ambiguous and the other one not. This approach confounds the parties and the process of interpretation of otherwise common language. The additional insured language says that Ohio will add as an additional insured any person "you (R-Custom) are required to name as an additional insured on this policy in a written contract or written agreement." The requirement is fulfilled by specifying the additional insured in a written contract or written agreement that is executed prior to the loss.

In similar fashion, the Ohio policy provides a choice of excess or primary coverage. The choice must be made in the same "written contract" or "written agreement." If the person named

as additional insured (Chugach or SRI) has a separate insurance policy, which has an Other Insurance provision making its policy excess, and a named insured (R-Custom) has agreed in a written contract or written agreement to provide the additional coverage on a primary and noncontributory basis, the Ohio policy shall be primary and (Ohio) will not seek contribution from the additional insured's policy for damages (Ohio) cover.

This Court has previously said that the terms "written contract" or "written agreement" in conjunction with the term "required" in one place in the policy are undefined and susceptible of two reasonable meanings. [See Order on SJ, Dkt. #66]. The Court concluded that the status of "additional insured" can be conferred by fulfilling the requirement, orally.

But in a related provision the words "written contract" or "written agreement" in conjunction with the term "agreed," does not give two reasonable meanings, although the verb "agreed" standing alone says nothing about a writing. These two views of the same terms do not make sense. The Court now holds that the language in both provisions is clear, concise and unambiguous.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not

affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## III. ANALYSIS

**A. An Insurance Policy Must be Read as a Whole to Determine its Meaning, and a Court Must Not Give it a Strained or Forced Construction Rendering Policy Language Ineffective.**

When interpreting an insurance contract, courts look to the whole contract, giving it a fair, reasonable, and sensible construction. *Holden v. Farmers Ins. Co. of Washington*, 169 Wn.2d 750, 755-56, 239 P.3d 344 (2010). Washington law provides that an "[i]nsurance contract should be given a practical and reasonable, rather than a literal, interpretation, and should not be given a construction which would lead to an absurd conclusion or render the policy nonsensical or ineffective." *Washington Public Utility Districts' Utilities Sys. v. Public Utility Dist. No. 1 of Clallam Cty.,* 112 Wn.2d 1, 11, 771 P.2d 701 (1989). Put another way, a court construing policy language "may not give an insurance contract a strained or forced construction which would lead to an extension or restriction of the policy beyond what is fairly within its terms. *McAllister v. Agora Syndicate, Inc.,* 103 Wn. App. 106, 11 P.3d 859 (2000), quoting *Morgan v. Prudential Ins. Co. of Am.,* 86 Wn.2d 432, 434, 545 P.2d 1193 (1976). The rule that ambiguous contract language is to be construed in favor of the insured and most strongly against the insurer should not be permitted to have the effect of making a plain agreement ambiguous. *McAllister*, 103 Wn. App. At 110, citing *West Am. Ins. Co. v. State Farm Mut. Auto. Ins. Co.,* 80 Wn.2d 38, 44, 491 P.2d 641 (1971).

The additional-insured endorsement at issue here is not unusual. This and substantially identical wording has been interpreted by courts in other jurisdictions without finding the ambiguities that Chugach claims exist. For example, in *Lloyd's v. American Safety* a California federal court addressing an endorsement with the "required to be named as an Additional Insured in a written contract" language found no ambiguity and ruled that there was no coverage, because no written contract between the developer and the insured contractor required contractor to name developer as an additional insured, and the broker was not able to create a binding agreement by issuing a certificate of insurance. *Certain Underwriters at Lloyd's of London v. American Safety Ins. Services, Inc.,* 702 F.Supp.2d 1169 (D.C. Cal. 2010). And in *Utica*, the New York Appellate Department found this endorsement was not ambiguous, and ruled there was no coverage where there was no "written contract" executed prior to the loss, as the endorsement required. *Burlington Ins. Co. v. Utica First Ins. Co.,* 71 A.D.3d 712, 896 N.Y.S.2d 433 (N.Y.A.D. 2 Dept. 2010).

**B. The Policy Language Requires That a Written Contract or Written Agreement Must Be Executed Prior to the Injury.**

The Court's prior Order on Summary Judgment [Dkt. #66] addressed the additional-insured endorsement in R-Custom's Ohio Casualty policy, which defined "who is an insured" to include:

> <u>Any person or organization whom you are required to name as an additional insured on this policy in a written contract or written agreement</u>. The written contract or written agreement must be currently in effect or becoming effective during the term of this policy <u>and executed prior to the "bodily injury,"</u> "property damage" or "personal and advertising injury."

Chugach must present evidence that an <u>executed</u>, <u>written</u> agreement or written contract requiring Chugach be named an additional insured was executed before the loss. "The entire

contract must be construed together in order to give force and effect to each clause." *Morgan v. Prudential Ins. Co. of America,* 86 Wn.2d 432, 434, 545 P.2d 1193 (1976).

**C. There is No Ambiguity as to Who Must Be a Party to the Contract for Additional-Insured Coverage Because Clear Policy Language Defining "You" as the Named Insured, R-Custom.**

This policy language speaks for itself, and is undisputed. In order for Chugach to be an additional insured, "you," meaning the named insured R-Custom, must be "required" to name Chugach an additional insured in a written contract or written agreement, executed prior to the loss.

This is clear not only from the additional-insured insuring agreement but also from a later, consistent, provision in the additional-insured endorsement.

> If the additional-insured's policy has an Other Insurance provision making its policy excess, and a Named Insured has agreed in a written contract or written agreement to provide the additional-insured coverage on a primary and noncontributory basis, this policy shall be primary and we will not seek contribution from the additional-insured's policy for damages we cover.

This provision makes clear that: (1) the Named Insured (R-Custom Excavation) – not someone else – must agree to provide the additional-insurance coverage; (2) that agreement by R-Custom must be in a written contract or written agreement; and (3) the agreement to provide the additional-insured coverage must be in the written contract or written agreement.

Ignoring clear policy language to manufacture ambiguity makes Chugach's interpretation not only unreasonable but wrong. No reasonable construction of the policy can render this language meaningless. A court may not construe a policy so as to create an ambiguity that does not exist.

**D. Chugach's Interpretation Gives the Insurance Policy Language a Strained and Forced Construction Rendering Policy Language Meaningless or Ineffective, and Creating Ambiguity Where None Exists.**

Chugach argues that the policy language including as an insured "any person or organization whom you are required to name as an additional insured on this policy in a written contract or written agreement" does not require a single contract. According to Chugach, this endorsement permits (1) a "requirement," meaning here an oral agreement to agree, and (2) a separate and unintegrated written contract or written agreement, between various possible parties, naming Chugach as an additional insured, but not necessarily with any binding effect. Chugach would also have "agreement" and "contract" defined by the dictionary, because the policy did not provide a definition. Chugach's interpretation is both unreasonable and wrong.

1. <u>Chugach's interpretation reads an oral "agreement to agree" into language calling for a written contract, rendering words ineffective and creating an absurd result</u>.

It is true that the endorsement might have been a bit clearer if the word order were changed, but that does not mean it is ambiguous. Nor does the fact that parties offer opposing meanings make the language ambiguous. *Mayer v. Pierce County Medical Bureau, Inc.,* 80 Wn. App. 416, 421, 909 P.2d 1323 (1995). Policy language should be given a practical rather than overly literal meaning. *Washington Public Utility Districts' Utilities Sys. v. Public Utility Dist. No. 1 of Clallam Cty.,* 112 Wn.2d 1, 11, 771 P.2d 701 (1989).

Chugach's interpretation would allow "required" to mean an oral agreement to agree later in a written contract. But oral agreements to agree are unenforceable. *Washington Public Utility Districts' Utilities Sys.,* 112 Wn.2d at 11. An oral agreement to make a written agreement would not be binding on R-Custom – and the word "required" would become ineffective. To read an unenforceable oral agreement into the policy in this context is absurd. Chugach is manifestly unable to show that there is any written, executed contract/agreement that required R-Custom to

name Chugach as an additional insured.  To get around this, Chugach asks the Court to insert an oral contract into this endorsement, even though it expressly requires a writing.

Second, even if Chugach were correct and an oral agreement to agree were sufficient to satisfy the "required" portion of the provision, Chugach's theory still fails on the remaining language – that R-Custom must meet this requirement by naming Chugach as an additional insured in a written contract or written agreement.  Of the collection of documents Chugach offered, none bound R-Custom to provide Chugach with insurance.  Even if there is some leeway about what constitutes a "written agreement," it must still be binding on R-Custom.  If the writing does not bind R-Custom, then the Court is asked to read the policy to require an unenforceable oral agreement to make an unenforceable written agreement.  This is an absurd and impractical result that is not a reasonable interpretation of the policy.  Other jurisdictions have found no ambiguity in this language and have correctly found no need to make such a strained construction of this endorsement.  *See Certain Underwriters at Lloyd's of London v. American Safety Ins. Services, Inc.,* 702 F.Supp.2d 1169 (C.D. Cal. 2010).

Chugach's interpretation of the policy language tortuously separates the provisions <u>what</u>: "required to name" – from the <u>how</u>: "in a written contract or written agreement" – when this is not needed to understand the provision.  Ambiguity is not necessarily to be found in the fact that a word or phrase isolated from its context is susceptible of more than one meaning."  *Ayres v. Prudential Ins. Co. of America,* 602 F.2d 1309, 1311 (9th Cir. 1979).  Chugach's parsing makes the words "required," "written" and "executed" meaningless and ineffective.  Washington law construes the language of an insurance policy to give meaning to all the words of the policy.  *Boeing Co. v. Aetna Cas. & Surety Co.,* 113 Wn.2d 869, 876, 784 P.2d 507 (1990).

2. <u>Dictionaries offer no definition of the phrases at issue, while Washington law determined what is a "written contract."</u>

While it is true that Washington courts may look to dictionaries for the plain meaning of undefined words, this is not a hard and fast rule. The Washington Supreme Court in *State Farm v. Ruiz* stated that in *Boeing,* "we did not intend to suggest that courts should ignore the technical meaning of a word when the legal significance of that word would be understood by a common person." *State Farm Mut. Auto. Ins. Co. v. Ruiz*, 134 Wn.2d 713, 720, 952 P.2d 157 (1998), citing *Boeing Co.,* 113 Wn.2d at 881. The terms "written contract" and "written agreement" would also be understood to have legal meanings beyond a common dictionary definition.

Washington law does not require a court to read the dictionary definitions of individual words in isolation from the surrounding context of the policy. *See Polygon NW v. American Nat'l Fire Ins. Co.,* 143 Wn. App. 753, 786, 189 P.3d 777, *review denied,* 164 Wn.2d 1033 (2008) (criticizing a party's attempt to read individual words "costs" and "taxed" in isolation from the surrounding provisions, giving those words the dictionary definitions most favorable to their case). Under Washington law, "[i]f parties to an insurance contract use words having a specific legal meaning, they will be presumed to have intended that those words be construed in accordance with established rules of law." *Polygon NW,* 143 Wn. App. at 788, *citing Burnhard v. Reischman*, 33 Wn. App. 569, 577, 658 P.2d 2 (1983). Indeed, "contract," "written contract" and even "written agreement" are legal terms well-defined by law. Therefore the parties would be presumed to intend that they would be construed under Washington law.

Washington law does not elevate dictionary definitions above its own case law, or define the existence of a legally binding contract or agreement by whether it meets the dictionary definition. Chugach has failed to show the required "written contract" or "written agreement" as

a matter of Washington law. This Court's prior Order ignored Washington law in favor of Chugach's dictionary definition, and was manifest error.

**E. The Documents Relied Upon by Chugach Do Not Satisfy the Ohio Policy's requirements.**

Chugach's argument that a Certificate of Insurance issued by a broker can be the "written agreement" required under the policy is manifestly unreasonable. A Certificate of Insurance does not contain all the elements of a "written contract" or "written agreement" under Washington law. Instead, it expressly <u>disclaims</u> any promise of coverage. On its face, the Certificate states that it is issued as a matter of information only and confers no rights upon the certificate holder, and does not amend, extend, or alter the coverage afforded by the policies. By its own terms, it does not "agree" to anything except the existence of a policy. An insurance certificate, as stated in Washington law, is only evidence of the existence of a policy. *Postlewait Construction v. Great American Insurance*, 106 Wn.2d 96, 100-101, 720 P.2d 805 (1986). As a matter of law, it cannot satisfy the requirements of a written contract or written agreement.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** summary judgment in favor of Ohio Casualty [Dkt. #66]. Ohio Casualty is entitled to declaratory judgment that under its policy issued to R-Custom Excavation, Ohio Casualty has no duty to defend Chugach and SRI and no duty to indemnify Chugach and SRI for the money they have paid as a result of the *Frostad* suit.

//

//

//

1 | The Motions in Limine [Dkt. #s 105, 106, 109] are **DENIED AS MOOT**. Ohio Casualty's

2 | Motion for Reconsideration [Dkt. #116] is **DENIED AS MOOT.**

3 |     **IT IS SO ORDERED.**

4 | DATED this 6th day of October, 2011.

                              */s/ Ronald B. Leighton*
                          RONALD B. LEIGHTON
                          UNITED STATES DISTRICT JUDGE